IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

Stacey D. Hariston,          )
    Plaintiff,            )
                         )
v.                            )          1:15cv656 (LMB/JFA)
                         )
Dr. Benjamin Ulep, et. al.,   )
    Defendants.           )

FILED
MAR 11 2016
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

<u>MEMORANDUM OPINION</u>

      Stacey D. Hariston, a Virginia inmate proceeding <u>pro se</u>, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs at Sussex I State Prison ("SISP"). This matter is now before the Court on defendants' motions for summary judgment, to which plaintiff filed responses on November 17, 2015 and December 10, 2015. For the reasons that follow, defendants' motions for summary judgment will be denied, plaintiff's Motion to Dismiss Summary Judgment will be granted, and defendants will be ordered to provide plaintiff with the shoes to which he is entitled.

**I. Background**

      Plaintiff is a Virginia Department of Corrections ("VDOC") inmate who has been confined at SISP since September 1, 2011. Dkt. No. 16, Davis Aff. at ¶ 6. It is undisputed that plaintiff suffers from several serious medical problems including a seizure disorder and multiple sclerosis, and that as a result of the latter medical condition, shortly after his arrival at SISP, Dr. Ulep prescribed him soft "white shoes with velcro strap" in November 2013. Dkt. No. 1 at 6. Plaintiff alleges that as of May 2015, when he filed the instant complaint, he still had not received these particular shoes. <u>Id.</u> Plaintiff attached several exhibits to his complaint including grievances and other documents, which show that his entitlement to the shoes is not in dispute; however,

prison personnel have been unable to agree on who bears responsibility to provide plaintiff with the shoes: the property department or the medical department.

On at least two occasions when plaintiff was attempting to obtain the shoes, a nurse at SISP, Nurse Woodruff, allegedly told plaintiff that "property is to furnish you with the shoes"; however, when plaintiff addressed a complaint to the property department, a sergeant responded, "Your issue is with medical." Dkt. No. 1, Exs. 1-3. Plaintiff thereafter unsuccessfully began the grievance procedure and subsequently filed the instant § 1983 complaint.

Plaintiff is seeking money damages, in the amount of $10,000 per defendant, and injunctive relief directing that he be provided properly sized shoes appropriate for someone with multiple sclerosis. Dkt. No. 1 at 9.

i. Warden Keith Davis' Involvement

Defendant Keith Davis was the Warden at SISP from March 2013 until May 2015, which includes all times relevant to this lawsuit. Dkt. No. 16, Davis Aff. at ¶ 1. Davis is not a medical doctor, and he does not make decisions about the diagnosis and treatment of an inmate's medical needs. Id. at ¶ 5. Rather, Davis' job at SISP was primarily administrative. Among his duties was ensuring compliance with medical operating procedure at the institutional level. Id.

VDOC grievance records show that on November 12, 2014, the grievance office at SISP received a grievance from plaintiff in which he requested shoes to accommodate his medical condition. Id. at ¶ 6. Although Nurse Woodruff responded accurately to the grievance when she stated that plaintiff did not have a foot deformity, her statement that he did not require medical prescription shoes was not supported by the record because Dr. Ulep had prescribed special shoes for the plaintiff in order to accommodate his medical condition. Id. Davis investigated the issue and found that the property department had not provided plaintiff with the medical prescription

2

shoes that Dr. Ulep had prescribed because property staff was not authorized to order that particular type of shoe, and only the medical department could order medical prescription shoes. Id. at ¶ 7.   There is no evidence in this record that Davis did anything to rectify this bureaucratic quagmire, and it is undisputed that plaintiff was not provided with the shoes Dr. Ulep prescribed.

In November 2014, the standard state issue shoes at SISP were blue canvas dock style shoes.   Dkt. No. 16, Brown Aff. at ¶ 5.   In December 2014, SISP changed to a white athletic shoe style because they were considered to be more durable and lasted longer.   Id.   The standard athletic shoes were issued by the housing units on an as-needed basis.   Id.

Plaintiff's personal property file does not contain documentation that any medical shoes were ordered for him while he was at SISP.   Dkt. No. 16, Brown Aff. at ¶ 4.   Moreover, it appears that SISP did not even offer plaintiff properly sized shoes.   Although the medical records show that plaintiff needs a size 11 EEE, the Property Supervisor at SISP informed plaintiff that stretchable size 12 shoes could accommodate plaintiff's size 11 EEE, and that therefore, plaintiff's current issue shoes could be exchanged for a size 12.   Id. at ¶ 7; see also Dkt. No. 1, Ex. 5.   There is absolutely no evidence in the record that supports the Property Supervisor's conclusion that a size 12 would provide the right fit for plaintiff; however, based upon this unfounded statement, Davis deemed plaintiff's grievance unfounded on December 5, 2014, and the Regional Administrator upheld the decision on appeal.[1]   Dkt. No. 16, Davis Aff. at ¶ 8.

---

[1] Plaintiff submitted evidence, which the defendants did not contradict, that persons with multiple sclerosis need properly fitted shoes to prevent falls, given that their medical condition creates gait problems. Dkt. No. 1 at 37 ("[P]eople with multiple sclerosis may have other concerns, such as how symptoms like spasticity, numbness, impaired balance and foot drop may affect walking. For them, the right shoes can make all the difference . . . . Though MS symptoms vary widely, 'most people need shoes that are supportive and adaptive enough to help normalize the gait as much as possible.'").   The medical records show that plaintiff has had difficulty walking due to his condition.   Dkt. No. 23, Med. Rec. at 59 ( "Pt voices that d/t . . . MS his legs and feet swell daily, therefore he's requesting to be provided a profile."); see also id. at 34 (discussing plaintiff's use of a cane that helps him walk to the dining hall area for meals).

VDOC policy requires that when an offender needs a medically necessary item, medical staff must procure the item, and the offender is required to make a co-payment for the item.   Id. at ¶ 9.

ii. Doctor Benjamin Ulep's Involvement

Defendant Benjamin Ulep, MD, is a medical doctor who provided medical care and treatment to inmates at SISP at all times relevant to this lawsuit.   Dkt. No. 23, Ulep Dec. at ¶ 1. On or about November 6, 2013, Dr. Ulep saw the plaintiff at a sick call and noted that plaintiff had requested to see him regarding the fact that he wanted to wear the white leather shoes with Velcro straps that had been issued to him previously at Greensville Correctional Center for his neurologic disorder, multiple sclerosis.   Id. at ¶ 7; Dkt. No. 23, Med. Rec. at 9.   Dr. Ulep evaluated the shoes and noted that they should be appropriate to the prison environment and that plaintiff needed secure footing to minimize his fall risk.   Id.   On November 6, 2013, Dr. Ulep completed plaintiff's first Health Care Profile indicating that plaintiff could wear the white shoes with Velcro straps in place of the blue shoes that were issued at SISP at that time.   Dkt. No. 23, Ulep Dec. at ¶ 7; Dkt. No. 23, Med. Rec. at 76.   Specifically, Dr. Ulep noted that plaintiff may wear "white shoes w/ Velcro straps . . . because of his MS."   Id.   The "stop date" for the shoes was directed to be "permanent."   Id.   If plaintiff had worn these shoes without a profile, security would have confiscated them.   Dkt. No. 23, Ulep Dec. at ¶ 6.

Between January 2014 and September 2014, plaintiff saw Dr. Ulep at least four times regarding complaints completely unrelated to his footwear.   Dkt. No. 23 at 4-5.   On November 7, 2014, Dr. Ulep saw plaintiff in the Chronic Disease Clinic.   During this visit plaintiff's concern was that the facility was unwilling to dispense a new pair of work boots for him without a medical detail.   Dkt. No. 23, Ulep Dec. at ¶¶ 12, 15; Dkt. No. 23, Med. Rec. at 45, 77.   At this time,

4

plaintiff had not received the "white shoes w/ Velcro straps." Based upon plaintiff's request for new shoes, Dr. Ulep administered a second Health Care Profile, on November 7, 2014, which indicated, "Patient needs Size 11 EEE state shoes/boots." Id. The stop date for these shoes was again directed to be "permanent," and the start date was noted to be "ASAP." Id.

Although Dr. Ulep properly filed two Health Care Profiles directing the institution to provide plaintiff with particular shoes, it is uncontested that plaintiff never received either the "white shoes w/ Velcro straps" or the "size 11 EEE state shoes/boots."

## II. Standard of Review

A court should grant summary judgment if the evidence on file "shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that judgment as a matter of law is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Those facts which the moving party bears the burden of proving are those which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine

when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).   Therefore, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).   The nonmoving party must present some evidence, other than its initial pleadings, to show that there is more than just a "metaphysical doubt as to the material facts."   Id. at 586; see also Celotex, 477 U.S. at 325.

### III. Analysis

Defendant Dr. Ulep has failed to demonstrate that he is entitled to summary judgment. Dr. Ulep was clearly aware that plaintiff needed special shoes at SISP to accommodate his multiple sclerosis.   Although he contests his personal responsibility to actually provide plaintiff with the particular footwear, Dr. Ulep specifically prescribed the shoes for plaintiff and notified SISP authorities that plaintiff was entitled to wear special white Velcro strap shoes that had been previously issued to him at another institution for his multiple sclerosis.   See Dkt. No. 23, Med. Rec. at 76.   Furthermore, this prescription was directed to be "permanent."   Id.   When plaintiff never received those particular shoes and one year later mentioned to Dr. Ulep that he needed shoes in a different size, Dr. Ulep issued another Health Care Profile for plaintiff entitling him to "size 11 EEE" shoes "ASAP" for a "permanent" time period.   Id. at 77.   Dr. Ulep does not dispute that plaintiff never received either the white Velcro shoes or the size 11 EEE shoes.

Similarly, although Warden Keith Davis may not have been personally responsible for providing plaintiff with the medically prescribed shoes, it is uncontested that he was directly involved with plaintiff's grievance procedure and could have granted plaintiff's grievance,

rectifying the confusion over who was to provide plaintiff with the shoes.   Davis' argument that

only medical staff was responsible for procuring special, medically necessary items was an

insufficient response.   Plaintiff's grievances put Davis on notice that plaintiff had requested

special shoes, that plaintiff was entitled to those shoes, and that plaintiff had not received the

shoes because the property manager would not distribute them and medical was not supplying

them.   Additionally, Davis admits that it was his responsibility to "ensure compliance with the

medical operating procedures."   See Dkt. No. 16, Davis Aff. at ¶ 5.

    Neither defendant disputes that plaintiff's first Health Care Profile states that since

November 6, 2013, plaintiff has been entitled to "white shoes w/ Velcro straps that he received

from GRCC, because of his MS," and that since November 7, 2014, a second Health Care Profile

has entitled plaintiff to "size 11 EEE state shoes/boots.   See Dkt. No. 23, Med. Rec. at 76-77.

Both Health Care Profiles are marked as "permanent"; however, years have passed and plaintiff

has not received either pair of shoes.

    Rather than simply remedying the issue and ensuring proper treatment, the defendants

have attempted to avoid responsibility, by inappropriately choosing to litigate this issue,

including filing motions with multiple attachments, affidavits, and declarations.   Given the cost

to taxpayers of litigating this case, the Court cannot comprehend why neither defendant has

simply arranged for plaintiff to be provided the shoes to which he is entitled.   The failure to

address plaintiff's genuine serious medical condition is a violation of his Eighth Amendment

rights.   For these reasons, both defendants' motions for summary judgment will be denied.

    Moreover, although plaintiff has not formally moved for summary judgment, the Court is

granting him a partial judgment because it is uncontestable on this record that he suffers a serious

medical condition for which properly fitting shoes are needed, the medical staff at SISP has

found that he should have such shoes, and there is no good reason why the shoes have not been provided to him.   Accordingly, the defendants will be ordered to arrange for plaintiff to be provided with the appropriate, properly fitting shoes.

Plaintiff has also asked for $10,000 in monetary damages from each defendant; however, he has offered no evidence showing that he has been subjected to pain or suffering as a result of defendants' failure to provide him with the appropriate shoes.   Despite plaintiff's vague and conclusory statements that he was having issues with the shoes that had been provided to him, there is no indication in his medical records suggesting that he ever experienced any pain due to improperly fitting shoes.   See Dkt. No. 1.   Likewise, plaintiff makes no statements in his affidavits filed on November 17, 2015 and January 11, 2016 regarding any alleged pain or suffering.   Dkt. Nos. 20, 28.   Without any evidence of pain and suffering, it would be improper to grant plaintiff monetary damages; however, it is appropriate that he should not have to make any copayment for the shoes that will be provided to him by SISP.

### IV. Conclusion

For the above stated reasons, defendants Keith Davis and Dr. Benjamin Ulep's motions for summary judgment will be denied, and judgment will be entered in plaintiff's favor by an Order to be issued with this Memorandum Opinion.

Entered this ___11th___ day of ___March_____ 2016.


Alexandria, Virginia

8